**UNITED STATES v. ADMIRAL REFINING CO. et al.**

No. 5685.

Court of Civil Appeals of Texas. Texarkana.
Dec. 5, 1940.

Steve M. King and John D. Rienstra, both of Beaumont, for appellant.

James S. Grisham, of Tyler, for appellees.

WILLIAMS, Justice.

In this appeal appellant, United States of America, intervenor below, attacks the fees and salaries allowed in receivership proceedings.

W. P. Weber sued Admiral Refining Company, a corporation, upon a series of notes and sought foreclosure of its alleged chattel mortgage lien on the company's property, all situated on its refinery site in Gregg County. In connection with its prayer for appointment of a receiver pending litigation, he alleged, among other reasons, that defendant had permitted taxes to accrue to the State and the Federal Government in large amounts and had so conducted its business that it was unable to obtain tenders upon legally produced oil.

Mayfield and Grisham of Tyler as attorneys for plaintiff filed above suit on September 2, 1935. Attorney Carl W. Wade of

Dallas filed on the same day a formal answer for the company. The following day William Z. Hayes, engaged in banking business, a resident of Dallas County, with agreement of above-named attorneys, was appointed receiver in the Smith County District Court to take charge of this estate in Gregg County. On September 3, 1935, the receiver qualified and filed a personal $2,000 bond. On the same date the receiver's application to lease the plant to one Van Nest at $1,000 monthly rental was approved by the court. Appellant and other creditors subsequently intervened to have their respective claims and liens allowed, one of whom attacked the claim of Weber as being fictitious. No assignment attacks any of the foregoing proceedings. Appellant's tax claim of $7,527.29 was allowed and classified as a lien (Weber waiving his lien) and by the court ordered next paid after the payment of costs, operating and administration expenses of receivership. On September 6, 1935, upon application of the receiver the court appointed L. T. Norman of Smith County as superintendent of the properties with the duty of making an inventory and to assist in collecting and procuring data incident to obtaining tenders of oil. This order fixed his salary at $100 per month plus all his actual expenses. This order was filed December 3, 1937. Under another order dated December 4, 1935, filed the same day, Norman was appointed general supervisor as an employee of the receiver. No salary was fixed in this order. Prior to November 25, 1935, the receiver employed above-named attorneys to represent him in his administration of the estate.

Norman, Hayes, Mayfield and Grisham, assisted by employed clerical help, examined and reviewed the files, records and books of defendant company and prepared statements therefrom which were used in their adjustment of appellant's claim for taxes, in securing tenders from the State Tender Board on certain oils, and in the suit by the State to confiscate alleged illegally produced oil. Mayfield and Grisham filed an answer in the State's suit at Austin, and the receiver made a trip there. The State prevailed in its suit. After two, or possibly more, hearings before the State Tender Board at Kilgore, tenders were obtained to move certain oils which were sold for $13,106.25. The receiver and above law firm appeared in the hearings held at Kilgore. A fire damaged the property, for which $1,145 fire insurance was collected. Van Nest surrendered his lease at the expiration of two months, for which the receiver collected $2,000 in rentals. The account for traveling expenses during the first twelve months, as filed by the receiver, reflects five round trips from Dallas to Tyler and Kilgore, and one to Austin. Orders were entered which approved and authorized the payment of $3,930.29 of secured claims. With exceptions had with the Internal Revenue Department in adjusting the taxes claimed, above data represents all services performed and all receipts had during the first twelve months. Thereafter, with exception of some minor routine actions had, the administration of the receivership remained inactive until January, 1939, at which time application was made for an order to sell the machinery and equipment. This was sold on February 25, 1939, at private sale for $8,892.84, whereupon the receiver filed his final account, together with prayer for allowance of fees and salaries which was contested by appellant.

The trial court allowed $10,400 to the receiver, $4,160 to Mayfield and Grisham, $1,040 to Wade, $4,028.90 to the superintendent, and $500 to the Master in Chancery. This total allowance of $20,128.90 together with $994.90 for expenses and $3,930.29 theretofore paid to other secured creditors consumed the entire $25,054.29 received in the sale of the assets. Various assignments attack each of these allowances as being grossly excessive, unreasonable and not warranted by the services rendered.

■■ · "We are mindful of the rule that allowances of this sort are usually within the sound discretion of the trial court and are presumptively correct, it ordinarily having a better means of knowing what is just and reasonable than the Appellate Court can have; but these matters are discretionary only in the sense that there are no fixed rules to determine a proper allowance." Roberts v. Howe, Tex.Civ.App., 125 S.W.2d. 617, 619, and authorities there cited; 53. C.J. p. 378, Sec. 614; Holland v. Silver Basin Min. Co., 113 Wash. 63, 193 P. 500. "All of the material facts and circumstances of the particular case are to be considered." 53 C.J. p. 386, Sec. 628.

■■ In Hickey v. Parrott Silver & Copper Co., 32 Mont. 143, 79 P. 698, 701, 108 Am.St.Rep. 510, applicable here, it is stated: "The considerations that should be controlling with the court in fixing compensation are the value of the property in controversy; the practical benefits derived from the re-

ceiver's efforts and attention; time, labor and skill needed or expended in the proper performance of the duties imposed, and their value measured by the common business standards; and the degree of activity, integrity, and dispatch with which the work of the recivership is conducted." 53 C.J. p. 386, Sec. 629. The measures to be weighed in fixing attorney's fees in receivership proceedings are, to a large extent, the same which are considered in fixing the receiver's fees. In fixing the allowances to either, the governing principle is that the compensation so allowed should be measured by the reasonable value of their services rendered. Pink v. State, Tex.Civ.App., 105 S.W.2d 265, 271; 53 C.J. p. 378, Sec. 614, p. 380, Sec. 617; 7 C.J.S., Attorney and Client, § 191, pages 1080, 1081.

■ When the above considerations are weighed and applied to the facts here, the allowances so made to the receiver and attorneys are unwarranted by the services rendered. The total amount allowed to each was calculated on a monthly basis extending over a period of approximately forty-two months at a monthly rate of $250 to the receiver, $100 to Mayfield and Grisham, and $25 to Wade. This plant was not operated and no attempt to operate it was made other than under the two-months lease to Van Nest. The receivership continued in an inactive status after the first twelve months. Litigation growing out of same had practically been concluded during the first twelve months. This would not justify the calculation of fees to be allowed receiver and attorneys at the same monthly rate throughout the forty-two months period of time.

When the ratio of $20,128.90 to the amount of the receipts or value of the estate is considered, the unreasonableness of such allowances to the receiver and attorneys becomes further patent. The allowances so made are in excess of the benefits which the estate derived from the efforts of the receiver and attorneys. Levassor v. Metropolitan Fire Ins. Co., 188 Ky. 23, 220 S.W. 752, 755; Roberts v. Howe, supra; Brand v. Denson, Tex.Civ.App., 81 S.W.2d 111; Pink v. State, supra.

■ This record does not disclose under which court order Norman, the superintendent, rendered services. The character or extent of his services and the time actually spent by him are not definitely shown. The testimony given on the hearing dealt in general terms with the character of services performed and time spent collectively by the superintendent, the receiver, and Mayfield and Grisham. The evidence is silent as to the services rendered by Wade other than consultation with the receiver, and the extent of this is not shown. The extent of services rendered by the Master in Chancery and time spent by him is not clear. The attorneys employed by the receiver had theretofore been employed by plaintiff and defendant, respectively, in the suit and their respective fees from this source was not shown. Ascertainment of such is also a consideration to be weighed in fixing their fees in this estate.

The foregoing condition of the record does not enable this court to finally pass upon and determine the compensation to be allowed each.

The cause is reversed and remanded, with direction that upon another and more complete hearing on the services performed the compensation awarded each be fixed in accordance with the principles and observations hereinabove made.