[No. 8508. Department One. February 5, 1910.]

ARTHUR W. GOUGH *et al.*, *Respondents*, v. L. W. CENTER, *Appellant.*[1]

APPEAL—REVIEW—HARMLESS ERROR—NONSUIT—DEFECTS SUPPLIED. In an action of ejectment, error, if any, in refusing to direct a nonsuit for failure to prove that the defendant was in possession, is cured, where the defendant's testimony in his own behalf supplied the defect.

DEEDS—INTEREST CONVEYED—ESTOPPEL—VENDOR AND PURCHASER— AFTER-ACQUIRED TITLE—MORTGAGE FORECLOSURE. Under Rem. & Bal. Code, § 8765, and independently thereof, an after-acquired title inures to the benefit of the grantee, and this rule applies to titles acquired through mortgage foreclosures.

ESTOPPEL—STIPULATIONS—EFFECT. A stipulation that a mortgage was given, judgment of foreclosure entered, and a sale had and deed executed thereunder, estops the party from asserting want of jurisdiction to render the judgment.

MORTGAGES — FORECLOSURE — DEED — AFTER-ACQUIRED TITLE. The mortgagor's after-acquired title inures to the benefit of the purchaser at the mortgage foreclosure, although the then owners of the title were not made parties to the foreclosure suit.

EJECTMENT—DEFENSES—ALIENAGE—BURDEN OF PROOF. In ejectment, the burden is upon defendant to establish the defense that an after-acquired title, inuring to the benefit of the plaintiff, was lodged in an alien incapable of acquiring real property in this state.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered September 10, 1909, upon the verdict of a jury rendered in favor of the plaintiffs, in an action of ejectment and to quiet title. Affirmed.

*A. H. Garretson* and *Jesse Thomas*, for appellant.

*Frank D. Nash*, for respondents.

RUDKIN, C. J.—This was an action of ejectment to recover possession of certain real property in Pierce county, and to quiet title thereto against the claims and demands of the

[1]Reported in 106 Pac. 774.

defendant, and all persons claiming or to claim by, through or under him. The plaintiffs deraigned their title as follows: The land is in an odd section, and lies within the place limits of the grant to the Northern Pacific Railroad Company, under the act of Congress of July 2, 1864; and the joint resolution of May 31, 1870. On the 30th day of December, 1874, the Northern Pacific Railroad Company conveyed the land by warranty deed to the Tacoma Land Company, a corporation. On May 15, 1885, the Tacoma Land Company conveyed by warranty deed to R. F. Radebaugh. On April 8, 1891, Radebaugh and wife mortgaged the land to the Mason Mortgage Loan Company to secure a loan of $2,000, the mortgage containing the following granting clause: "Do grant, bargain, sell and convey unto the said party of the second part, its successors and assigns forever, all the following described real estate." This mortgage and the note secured thereby were assigned by the mortgagee to one Woodward, and Woodward foreclosed the mortgage, by action in the superior court of Pierce county against Radebaugh and wife. The property was sold by the sheriff to the plaintiff in the execution, who assigned his certificate of purchase to one Augusta Elterich; and the sheriff's deed issued to the assignee of the certificate, after the expiration of the redemption period. On January 31, 1907, Elterich conveyed by warranty deed to Arthur W. Gough, one of the plaintiffs in this action. On February 15, 1907, Gough and wife, by warranty deed, conveyed a portion of the premises to the plaintiff R. B. Pierce. Thereafter Mrs. Gough died, intestate, and the other plaintiffs are her heirs at law.

Long after the conveyance from the Northern Pacific Railroad Company to the Tacoma Land Company, the secretary of the interior held that this particular land was excepted from the grant to the railroad company, by reason of a preemption filing made by one Martindale in the year 1869, and the railroad selection was thereupon cancelled. Thereafter, and on the first day of April, 1899, the United States

patented the land to the Tacoma Land Company, under the act of Congress of March 3, 1887, by reason of its purchase in good faith from the railroad company. On the foregoing facts, the court directed a judgment in favor of the plaintiffs, and the defendant has appealed.

Many errors are assigned in the appellant's brief on rulings made by the court during the progress of the trial in respect to the pleadings, but in the argument before this court all such assignments were waived, and the appellant based his right to a reversal on the refusal of the court to direct a nonsuit at the close of the respondents' testimony. One of the grounds urged in support of the nonsuit was the failure of the respondents to prove that the appellant was in possession of the land at the time of the commencement of the action. If we assume that there was a failure of proof, and that such failure was fatal to the respondents' right of recovery, the defect was supplied by the appellant, who testified in his own behalf that he was then in possession and had been for several years previously.

The only remaining question is the sufficiency of the respondents' proof of title. Rem. & Bal. Code, § 8765, provides as follows:

"Whenever any person or persons having sold and conveyed by deed any lands in this state, and who, at the time of such conveyance, had no title to such land, and any person or persons who may hereafter sell and convey by deed any lands in this state, and who shall not at the time of such sale and conveyance have the title to such land, shall acquire a title to such lands so sold and conveyed, such title shall inure to the benefit of the purchasers or conveyee or conveyees of such land to whom such deed was executed and delivered, and to his or their heirs and assigns forever. And the title to such land so sold and conveyed shall pass to and vest in the conveyee or conveyees of such lands, and to his or their heirs and assigns, and shall thereafter run with such land."

This rule prevails generally, independent of statute. 2 Devlin, Deeds (2d ed.), § 944 *et seq.* A title obtained

through mortgage foreclosure is no exception to the rule. *People's Savings Bank v. Lewis,* 37 Wash. 344, 79 Pac. 932; Jones, Mortgages (5th ed.), § 679; Wiltsie, Mortgage Foreclosure, § 391.

We will now refer briefly to the reasons assigned by the appellant why the rule should not obtain in this case. It is first contended that there was no proof that process was served on the defendants in the foreclosure action, or that the court had jurisdiction of the parties. This objection is not open to the appellant at this time. He stipulated that a mortgage was given, that a judgment of foreclosure was entered, that a sale was made by the sheriff and a deed executed, and this stipulation carried with it the implication that all such proceedings were regular and legal. If he desired to object to the jurisdiction of the court to enter the judgment, he should have raised that question at the proper time and in the proper forum. A party will not be permitted to stipulate that a judgment was rendered and thereafter question the jurisdiction of the court to render it, unless he expressly reserves that question.

It is next contended that the United States was not a party to the foreclosure, that the mortgagors had no title, and that by reason of these facts the foreclosure was void. We apprehend a deed is always void, or at least ineffectual, where the grantor has no title at the time of its execution, but this is no objection to the application of the rule that an after-acquired title passes by estoppel. Indeed, the rule could have little or no application if the contention of the appellant is sound.

It is lastly contended that there is no proof that the holder of the railroad title, at the time of the issuance of the patent to the Tacoma Land Company, was a citizen of the United States, or had declared her intention to becoming such. The respondents are not claiming that the patent issued to the wrong person, or that the original patentee holds the title in trust for them by reason of that fact. If they were, it

might be incumbent on them to show that their grantor was qualified to take under the act of Congress. They base their right or title on the general ground of estoppel above set forth, and if there is any reason why that general rule of law should not obtain here, the burden is on the appellant to show that fact. An alien cannot hold land in this state, except acquired in a certain way, nor could such a one enforce the specific performance of a contract of sale; for a court of equity will not aid him in obtaining a title which he cannot hold. Yet it has never been deemed necessary in such actions to allege or prove that the plaintiff is a citizen of the United States. A corporation, the majority of whose stock is held by aliens, cannot exercise the right of eminent domain, but the petitioner in such cases is not required to allege or prove that a majority of its capital stock is held by citizens. *State ex rel. Forney v. Superior Court*, 55 Wash. 215, 104 Pac. 200. So in this case, if the after-acquired title would not inure to the benefit of the respondents' grantor, if she were an alien—a question upon which we express no opinion—the burden was on the appellant to show the fact of alienage.

We are therefore of opinion that respondents established a clear title to the property in controversy, and that the judgment of the court below should be affirmed. It is so ordered.

FULLERTON, CHADWICK, GOSE, and MORRIS, JJ., concur.